**Robert W. EARLEY, Plaintiff,**

v.

**EXECUTIVE BOARD OF THE UNITED TRANSPORTATION UNION, et al., Defendants,**

**and**

**Robert W. EARLEY, Plaintiff,**

v.

**Kenneth R. SMOOT, et al., Defendants.**

**Nos. 1:94cv0597, 1:94cv0674.**

United States District Court, N.D. Ohio.

Oct. 29, 1996.

Order Vacating Injunction as to Defendants Jan. 31, 1997.

J. Michael Murray, Steven D. Shafron, Larry S. Gordon, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for Robert W. Earley.

Clinton J. Miller, III, Cleveland, OH, for United Transp. Union Executive Bd.

Clinton J. Miller, III, Daniel R. Elliott, Asst. General Counsel, Cleveland, OH, for K.N. Thompson, J.L. Arnold, S.N. Kramer, J.A. Huston and John Doe.

Lance E. Ruck, El Paso, TX, pro se.

## MEMORANDUM OPINION

ECONOMUS, District Judge.

This matter is before the court on the request of Plaintiff, Robert W. Earley ("Earley") for a permanent injunction. Earley has alleged violations of the Federal Wiretap Act ("Act"), 18 U.S.C. § 2510 *et. seq.*, as well as related state law claims. Earley seeks to prevent Defendants from commencing a trial of an intra-union charge against him for breach of duty based upon a tape recording which was made without his knowledge or permission. A hearing regarding the permanent injunction was held on May 31, 1996.

*FACTS*

Earley is a Vice President of the United Transportation Union ("UTU"). The UTU is an unincorporated labor organization headquartered in Cleveland, Ohio. On May 6, 1993, Public Law Board No. 3882 ("PLB"), a private arbitration panel created pursuant to the Railway Labor Act, 45 U.S.C. § 153, convened to consider whether Defendant, Kenneth R. Smoot ("Smoot"), who is a member of the UTU, was entitled to a distribution of thirty shares of stock pursuant to a labor agreement between Smoot's employer, CSX Transportation, Inc. ("CSX"), and the UTU.

The PLB hearing was held on or about May 6, 1993, at the Baltimore, Maryland offices of CSX. The members of the PLB who were present at the meeting were Earley as the UTU representative for Smoot, Howard Emerick as the Senior Director of CSX and H. Raymond Cluster, the Chair and neutral member. Smoot brought two tape recorders to the meeting. At some time during the meeting, Smoot turned on the recorders. Before the beginning of an executive session of the meeting, Smoot was asked to leave. He left but did not turn the recorders off. None of the parties to the executive session were aware that the meeting was being recorded.

On July 15, 1993, a decision was reached by the PLB denying Smoot's claim for distribution of the CSX shares. This decision was formalized on August 30, 1993, when the PLB issued an "award" denying Smoot's claim.

In October 1993, the recordings of the executive session were transcribed by Brightwell Reporting Service. The UTU alleges that Earley was trying to convince the neutral that Smoot's claim should be denied. Earley maintains that his position on the Smoot claim was based upon his understanding of the requirements for the distribution of stock under the labor agreement.

By letter dated December 15, 1993, Smoot wrote to Defendant, K.N. Thompson, Chair of the UTU's Executive Board, presenting formal charges against Earley. The Executive Board is a union board established under the UTU International Constitution and is

authorized, under the constitution, to investigate and adjudicate charges against UTU officers. Smoot's letter charged Earley with breach of a duty of good faith and fair dealing as a Union representative at the PLB hearing. The letter included an attached transcript of the recording of the hearing. On January 19, 1994, Earley was notified by the Executive Board that it would proceed with the charges brought against him by Smoot. A disciplinary hearing was set for March 23, 1994.

On March 14, 1994, Earley filed an action against Smoot in the United States District Court for the District of Maryland requesting declaratory and injunctive relief. On March 16, 1994, Plaintiff moved for a temporary restraining order to prohibit Smoot from using or disclosing the substance of the tapes made during PLB hearing at a trial before the Executive Board. On March 22, 1994, the Honorable Judge Frederic N. Smalkin of the United States District Court for the District of Maryland issued a preliminary injunction which enjoined Smoot from participating in the UTU disciplinary proceedings against Earley to the extent that they involved allegations that Earley acted improperly in connection with the PLB proceedings. (Order Granting Prelim. Inj. at 1). Smoot was further ordered to refrain from using the tape or transcript except in connection with his defense in this action. (Order Granting Prelim. Inj. at 2). Judge Smalkin then transferred the action to United States District Court for the Northern District of Ohio where it was assigned Case No. 1:94cv674.

On March 28, 1994, Defendant, Lance E. Ruck ("Ruck"), a member of the UTU, filed a charge with the Executive Board against Earley after he read a copy of the transcript of the PLB hearing. In that charge, Ruck alleged that Earley argued against the official position of the UTU in the Smoot hearing. He also alleged that Earley therefore failed to perform his duties as required under the UTU constitution. Ruck admitted during a preliminary injunction hearing that he listened to a copy of the tape made by Smoot several times and that his claims against Earley were for the same wrongdoing as those alleged by Smoot. In effect, Ruck attempted to continue the disciplinary hearing that Smoot had been enjoined from continuing. Earley amended his Complaint in Case No. 1:94cv674 and named Ruck as a defendant.

Earley also filed a another action in the United States District Court for the Northern District of Ohio naming as defendants, the UTU Executive Board and the individual members of the Board. That action was filed on May 22, 1994, and was docketed as Case No. 1:94cv597. In that case, Earley sought to enjoin the UTU Executive Board members from holding a trial on the charges of Ruck and Smoot. Earley alleged that the Executive Board members had read the entire transcript of Smoot's tape and, therefore, could not objectively adjudicate the charges against him. Earley further asserted that the Executive Board's use of the transcript violated the Act. Because of the commonality of facts and issues, the two cases, Case No. 1:94CV597 and Case No. 1:94CV674, were consolidated on May 18, 1994.

On March 16, 1995, United States District Judge Solomon Oliver, Jr. granted Earley's motion for a preliminary injunction which precluded the UTU from commencing a trial on the intra-union charges against Earley.

## LAW

Earley is seeking a permanent injunction which would prohibit the use or disclosure of the contents of the recordings of the executive session of the PLB. A hearing was held before this Court on May 31, 1996, during which testimony and evidence were presented. In addition, the parties have submitted the transcript of the preliminary injunction hearing that was held before Judge Oliver for the Court's consideration.

■ The Court examines the following factors when determining the propriety of a permanent injunction:

1. The plaintiff has prevailed on the merits of its claims;

2. The plaintiff will suffer inseparable injury if the permanent injunction is not issued; and

3. The balance of the equities weighs in favor of the entry of the permanent injunction.

*National Interstate Insurance Company v. Perro*, 934 F.Supp. 883, 889 (N.D.Ohio 1996).

### 1. The Merits of Earley's Claims

■ Title 18, U.S.C. § 2511 provides civil and criminal penalties for the intentional use and/or disclosure of information obtained in violation of the Federal Wiretap Act. Section 2511 provides, in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States.

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(e) (i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(A)(ii), 2511(b)-(c), 2511(e), 2516. and 2518 of this subchapter, (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation.

18 U.S.C. § 2520(b) provides that appropriate relief for a violation of the Act includes "such preliminary and other equitable or declaratory relief as may be appropriate...."

Based upon the evidence presented, the Court finds that Defendants have violated § 2511 by tape recording the executive session of the PLB and by the use and disclosure of the contents of said tape. Smoot intentionally recorded the meeting without the knowledge and consent of any of the parties to the meeting. Smoot, Ruck and the Executive Board of the UTU have disclosed the contents of the recording on numerous occasions with the knowledge of how the recording was made.

### 2. Irreparable Injury

■ If the Court denies Earley's request for a permanent injunction, the UTU would proceed with Smoot's and Ruck's charges against him and use the tape recordings

against him. The Sixth Circuit has held that each time an illicitly obtained recording is replayed to a new and different listener, the scope of the invasion of privacy of an aggrieved party is widened. *Fultz v. Gilliam,* 942 F.2d 396, 402 (6th Cir.1991). "It seems beyond doubt that the release of unlawfully obtained wiretap material to any third party ... is clearly banned by the Act." *Id.*

█ Additionally, the full and fair hearing to which a union member is entitled before being expelled is at a minimum a hearing by an unbiased and disinterested tribunal. *Mayle v. Laborer's Int'l Union. Local 1015,* 866 F.2d 144, 146 (6th Cir.1988) *citing Myers vs. Affiliated Property Craftsmen,* 667 F.2d 817, 820 (9th Cir.1982) *citing Falcone v. Dantinne,* 420 F.2d 1157, 1166 (3rd Cir.1969). Bias exists where the hearing tribunal is hostile to the member, has prejudged the member's guilt, or has considered matters not presented at the hearing. *Myers,* 667 F.2d at 820.

There is evidence of bias by members of the Executive Board who would conduct the trial of the claims against Earley. Testimony indicated that in January of 1993, five members of the Executive Board met in St. Louis for eight hours. During that time, they reviewed materials concerning the Earley matter, including the transcript of the Smoot tape. Based on the materials which they reviewed the Executive Board members determined that a trial should be convened.

In view of the Act's prohibition against the use of any unlawfully obtained wiretap material, the testimony and evidence presented to this court at the permanent injunction hearing, and Earley's rights to privacy and a fair hearing, the Court finds that Earley will suffer irreparable injury if the Court does not grant his request for a permanent injunction.

### 3. Balancing the Equities

█ While Defendants have an interest in a full hearing on whether Earley, a UTU officer, breached his duties, the decision should not be based upon evidence which was improperly, if not, illegally obtained. As discussed above, Earley has the right to a fair and impartial hearing and the right to privacy. The Court finds that the balance of the equities weighs in favor of the entry of the permanent injunction.

### CONCLUSION

For the reasons set forth above, the Court shall enter a permanent injunction against Defendants which shall prohibit the disclosure and use of the tape recordings of the PLB executive session which was held May 6, 1993. An appropriate Order shall accompany this Memorandum Opinion.

**IT IS SO ORDERED.**

### ORDER

In accordance with the Memorandum Opinion filed this day, Plaintiff's request for a permanent injunction is **GRANTED** as follows:

1. Defendants, their officers, agents, servants, employees and attorneys are permanently enjoined from using or disclosing for any purpose whatsoever any tape recording, transcript of any tape recordings or any evidence derived from the executive session of the Public Law Board 3882 held on May 6, 1993;

2. Defendants, their officers, agents, servants, employees and attorneys are permanently enjoined from convening and proceeding to trial upon the charges lodged with the Executive Board by Defendant, Kenneth R. Smoot and Lance E. Ruck relating to or in any manner connected with the proceedings held before the Public Law Board 3882 on May 6, 1993; and

3. Defendants, their officers, agents, servants, employees and attorneys are permanently enjoined from using, communicating and disclosing, either orally or in writing, to anyone the contents of the tape recording and/or transcript of the executive session of the Public Law Board 3882 held on May 6, 1993.

**IT IS SO ORDERED.**

### JUDGMENT

This cause came on for hearing this 31st day of January, 1997, upon the motion of the plaintiff for an order of voluntary dismissal of

the within action, conditioned on the Court's reserving jurisdiction to give effect to or to enforce the Settlement Agreement entered into by the plaintiff and defendants.

WHEREUPON, this Court finds that the plaintiff and defendants have entered into a Settlement Agreement, which agreement provides, inter alia, that the plaintiff shall move for dismissal of this action with prejudice, subject, however, to a reservation of jurisdiction by this Court.

The Court further finds that defendants herein, by and through their counsel, have notified the Court in a writing filed with the Court that defendants consent to the allowance of plaintiff's motion. Intervenor Lance E. Ruck is not a party to the Settlement Agreement.

The Court finally finds that plaintiff's motion is well-taken and, in the interest of justice, should be granted.

IT IS, THEREFORE, ORDERED that this action be, and is hereby, dismissed with prejudice at plaintiff's costs.

IT IS FURTHER ORDERED that the permanent injunction entered herein on October 29, 1996, be, and it is hereby, vacated as to these defendants only.

IT IS, FINALLY, ORDERED that the Court shall retain jurisdiction over the persons of the plaintiff and defendants, and over the subject matter of the action and the Settlement Agreement entered into by plaintiff and defendants, for the purpose of entering any order, if moved by a party to do so, and after notice and hearing, which the Court shall determine is necessary to give effect to or to otherwise enforce the Settlement Agreement between plaintiff and defendants, including, without limitation, the entry of a restraining order, and other injunctive relief, temporary and permanent.